Tamara Reid (SBN 9840)
HOLLAND & HART LLP
5441 Kietzke Lane, Second Floor
Reno, Nevada 89511
Phone: (775) 327-3000
Fax: (775) 786-6179
treid@hollandhart.com

Brent Johnson
(*Pro hac vice* to be filed)
Christopher B. Hadley
(*Pro hac vice* to be filed)
HOLLAND & HART LLP
222 South Main St., Suite 2200
Salt Lake City, UT 84101
Phone: (801) 799-5873
Fax: (801) 618-4238
bjohnson@hollandhart.com
cbhadley@hollandhart.com

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| **FAN FI INTERNATIONAL, INC.**, a Nevada corporation, and **ETL, LLC d/b/a OXYGENICS**, a Nevada limited liability company,<br><br>Plaintiffs,<br><br>v.<br><br>**INTERLINK PRODUCTS INTERNATIONAL, INC.**, a New Jersey corporation,<br><br>Defendant. | Case No.:<br><br>**COMPLAINT &<br>DEMAND FOR JURY TRIAL** |

Plaintiffs Fan Fi International, Inc. and ETL, LLC d/b/a/ Oxygenics (collectively, "Plaintiffs") by and through their counsel, Holland & Hart LLP, for their Complaint against Defendant Interlink Products International, Inc., ("Defendant" or "Interlink"), state and allege as follows:

## NATURE OF THE ACTION

1. Plaintiffs seek injunctive and monetary relief against Defendant for false advertising and deceptive trade practices pursuant to the Federal Lanham Act and Nevada's Deceptive Trade Practices Act and the common law of the State of Nevada.

## THE PARTIES

2. Plaintiff Fan Fi International, Inc., is a Nevada corporation with its principal place of business at 1150 Matley Lane, Suite 101, Reno, Nevada 89502.

3. Plaintiff ETL, LLC d/b/a Oxygenics is a Nevada limited liability company with its principal place of business at 1150 Matley Lane, Suite 101, Reno, Nevada 89502.

4. Defendant Interlink Products International, Inc., is a New Jersey corporation with its principal place of business at 1315 East Elizabeth Avenue, Linden, New Jersey 07036.

## JURISDICTION

5. This action arises and is brought under the Lanham Act, 15 U.S.C. § 1051, *et seq.*, the common law of the State of Nevada and the Nevada Deceptive Trade Practices Act, Nev. Rev. Stat. Ann. § 598.0953, *et seq*. This court has subject matter jurisdiction over the federal claims pursuant to the provisions of 15 U.S.C. § 1121, 28 U.S.C. § 1331. This Court also has supplemental jurisdiction over the factually-related state law claims in this dispute pursuant to 28 U.S.C. §1367.

6. This Court has personal jurisdiction over Defendant in that it does business regularly in this district and the claims at issue in this case arise out of or are related to Defendant's business activities with respect to this district. Upon information and belief, Defendant regularly advertises, offers for sale, ships and sells, to customers located in Nevada, products that bear the false and misleading statements at issue in this case or to which those statements pertain. Defendant also knowingly and intentionally causes the products that are the subject of the false and misleading statements at issue to be advertised, promoted and sold in Nevada. Defendant thus purposely directs its business activities to this forum and the claims herein thereby arise out of and relate to such business activities.

7.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and (c), in that Interlink has disseminated and has caused to be prepared and disseminated in interstate commerce throughout the United States and within this judicial district, advertisements and promotions for its products, including the advertisements at issue in these claims.

## GENERAL ALLEGATIONS

**I.      Legal Requirements Relating to the Sale of Shower Heads in the United States**

8.      Water conservation is a critical public policy in the United States. To that end and pursuant to Title 42 of the U.S. Code as amended by the Energy Policy Act of 1992, 42 U.S.C. §§ 6291 – 6309, and implementing regulations at 10 C.F.R. §§ 430.31 – 34, it is unlawful to manufacture and sell a showerhead in the United States having a water flow greater than 2.5 gallons per minute (gpm) measured at a water pressure of 80 pounds per square inch (p.s.i.). 42 U.S.C.A. § 6295(j); 10 C.F.R. § 430.32 (p). There is no Energy Policy Act exception to the 2.5 gpm requirement for showerheads with removable flow restrictors.

9.      The Energy Policy Act also requires that any showerhead that uses a removable regulator to limit water flow must "meet the requirements of ASME/ANSI A112.18.1M-1989, 7.4.3(a)" – which (inter alia) sets forth the minimum allowable removal force. 42 U.S.C.A. § 6295(j). As set forth in the implementing regulation: "When used as a component of any such showerhead, the flow-restricting insert shall be mechanically retained at the point of manufacture such that a force of 8.0 pounds force (36 Newtons) or more is required to remove the flow-restricting insert." 10 C.F.R. § 430.32 (p).

10.     42 U.S.C. § 6302(a) prohibits the distribution in commerce of showerheads that do not comply with the Energy Policy Act's energy conservation and labeling requirements.

11.     Under the U.S. Department of Energy's Showerhead Enforcement Guidance of March 4, 2011, "multiple spraying components sold together as a single unit designed to spray water onto a single bather constitutes a single showerhead for purposes of the maximum water use standard. . . . Thus, consistent with the Department's test procedure, to determine whether a manufacturer's showerhead complies with the 2.5 gpm standard set by Congress, the Department

will measure a showerhead's water use by turning all of a unit's sprays and nozzles to their maximum flow settings."

## II. Interlink's Shower Products

12. Interlink produces, markets, imports, and sells showerheads in interstate commerce through online channels, including its website www.ipshowers.com, and third-party retailers Groupon.com, Wayfair.com, Overstock.com, eBay.com, and Amazon.com, as well as through traditional retailers, such as Wal-Mart and Bed Bath & Beyond (collectively, "retailers").

13. Interlink has marketed and sold its products to Nevada citizens through retailers.

14. Plaintiffs market, import and sell showerheads in direct competition with Interlink through retailers.

15. Interlink sells single head design showerheads, such as its HotelSpa 10 inch Color Changing Rainfall LED Shower Head with 15 inch Arch Height Adjustable Arm (see attachment **Exhibit 1**) and its Power Spa Air-Turbo LED Shower Head with Pressure-Boost Technology (see attachment **Exhibit 2**). Many of Interlink's showerheads are multiple-nozzle showerheads, including PowerSpa® All-Chrome 3-way LED Twin 7 Color Shower System with Air Turbo Pressure- Boost Technology and HotelSpa® Ultra-Luxury 30-setting 3-way Rainfall/Handheld Shower Combo (Chrome) (see **Exhibit 3**).

## III. Interlink Falsely Represents to Consumers and Retailers that Its Shower Heads Flow Rates Are 2.5 gpm Or Less and, Therefore, Legally Compliant

16. Interlink represents, in its advertising and marketing materials, online product listings, product packaging and on its website that all of its showerheads have a water flow of 2.5 gpm or less, as required by the Energy Policy Act and its implementing regulations.

17. In addition, Interlink certifies and represents to retailers that its showerheads are lawful to manufacture, market and sell in the United States, which includes compliance with the Energy Policy Act's 2.5 gpm flow restriction.

18. Interlink's representations to consumers that its showerheads' water flow is 2.5 gpm, which flow rate complies with the Energy Policy Act, and its certifications and representations to retailers that its showerheads comply with federal law are false, misleading and

4

1  deceptive as many of Interlink's showerheads do not comply with the Energy Policy Act's 2.5 gpm
2  flow limit, but put out significantly more water than is permitted by the Act when the flow
3  restrictors are removed from the showerheads.

4      19.    Many of Interlink's products have removable water flow regulators, and Interlink
5  provides instructions to consumers on how to remove the flow regulators.

6      20.    For example, in the manual pamphlet of the HotelSpa LED 10" Rainfall
7  Showerhead, these words are conspicuously printed "Low Water Pressure? You can remove Water
8  Flow Regulator." (see **Exhibit 4**).

9      21.    Interlink further provides the detailed steps and diagram for removing the water
10 regulator in this section, by "using screwdriver or other pointed tool, pull up and remove Thick
11 Washer with Groove from Angel Valve of Extension Arm. Then lift and remove Water
12 Regulator." *Id.*

13     22.    In order to facilitate the removal of the flow regulator, Interlink further lists a free
14 "1-888" customer service number to call and Interlink provides a spare part called "Thick
15 Replacement Washer" without groove to replace the removed "Thick Washer." *Id.*

16     23.    Although the instructions reference "Low water pressure?" it is left to the consumer
17 to decide what constitutes "low water pressure."

18     24.    There is no "low water pressure" exception to the Energy Policy Act's showerhead
19 flow rate requirement, which calls for all showerheads to be tested at 80 p.s.i.  Interlink does not
20 disclose, in its instructions for disabling its showerheads' regulators, that following these
21 instructions will render the showerheads non-compliant with the flow rate prescribed under the
22 Energy Policy Act.

23     25.    Accordingly, Interlink manufactures, sells and distributes into the stream of
24 interstate commerce showerheads that have a flow rate higher than the rate permitted by the
25 Energy Policy Act while misrepresenting to consumers and retailers that its showerheads comply
26 with the 2.5 gpm requirement of federal law.

27     26.    Interlink facilitates the removal of flow regulators to increase the flow rate of the
28 showerheads permanently in order to gain an unfair market advantage – *i.e.*, by selling an unlawful

high-flow showerhead while representing to consumers and retailers that its showerheads comply with the requirements of federal law.

27. Interlink's false statements and unlawful flow regulator removal practices are material to consumers, many of whom would not have purchased Interlink's showerheads if they had known that the 2.5 gpm flow rate representation was false due, among other reasons, to environmental and water usage concerns, but would instead have purchased the showerheads of other manufacturers, including Plaintiffs.

28. Interlink's practice of stating, on one hand, that its showerheads put out no more than 2.5 gpm of water while, on the other hand, instructing consumers on how to remove the flow regulator renders its showerheads a violation of federal law and this violation is material to retailers, some or all of which would not have purchased and resold Interlink's showerheads if they had known that these representations were false, but would instead have purchased and resold the showerheads of other manufacturers, including Plaintiffs.

29. Interlink's misrepresentation of its product flow rate and compliance with federal law is deceptive and, in fact, has a tendency to deceive e-commerce operators, retailers, and consumers.

30. Interlink's false statements were made willfully and with the intention of causing confusion, mistake or deception in the market, making this an exceptional case within the meaning of 15 U.S.C. § 1117(a) entitling Plaintiffs to an award of enhanced damages and reasonable attorneys' fees.

31. Interlink's distribution in commerce of its non-compliant showerheads is unlawful under 42 U.S.C. § 6302(a).

32. Interlink's instruction to remove the water flow regulator is a way to disguise its practice of circumventing the federal regulations and profit by its deception.

33. This results in further increased sales and further unjust enrichment of Interlink through its deceptive and unfair marketing practices.

**IV.  Interlink Falsely Certifies and Represents to Retailers that its Shower Heads Comply with Federal Law**

34. As set forth above, many of Interlink's products contain a removable flow regulator, and Interlink provides instructions to consumers on how to remove the flow regulator.

35. Removable flow regulators are permissible under federal law only if an exertion of 8.0 pounds force (36 Newtons) or more is required to remove them (the 'force test"). 42 U.S.C.A. § 6295(j); 10 C.F.R. § 430.32 (p).

36. Some of Interlink's showerheads fail this test.

37. Many retailers to whom Interlink sells require their suppliers to represent and/or certify that their products comply with all applicable laws and regulations. For example, Wal-Mart mandates that suppliers certify that their products conform to all local and national laws and regulations of the jurisdictions in which the suppliers are doing business.

38. Interlink falsely certifies and/or represents to retailers that its showerheads comply with federal law when they do not given that the showerheads with removable flow regulators fail the force test mandated by Congress and the Department of Energy.

39. Interlink's misrepresentations to retailers that its showerheads comply with federal law are material to retailers, who would not have purchased and resold Interlink's showerheads if they had known that Interlink's showerheads do not comply with federal law, but would instead have purchased and resold the showerheads of other manufacturers, including Plaintiffs.

40. Interlink's misrepresentation of its showerheads' compliance with federal law is deceptive and, in fact, has a tendency to deceive retailers.

41. Interlink's false statements were made willfully and with the intention of causing confusion, mistake or deception in the market, making this an exceptional case within the meaning of 15 U.S.C. § 1117(a) entitling Plaintiffs to an award of enhanced damages and reasonable attorneys' fees.

42. Interlink's distribution in commerce of its non-compliant showerheads is unlawful under 42 U.S.C. § 6302(a).

**VI.     Interlink's LED 100,000 Hour Lifespan Claim is False**

43.    Interlink markets and advertises on Amazon.com, ipshowers.com and various other websites that its showerheads with LED lights powered solely by running water with no batteries or electricity have an exceptionally long life of 100,000 hours (see Exs. 1 – 2). This 100,000 hour claim far exceeds the typical claims made regarding LED lighting of 25,000 to 50,000 hours.

44.    LED life claims are inherently uncertain, resting on the "estimated lumen depreciation of the LED used in the product and often do not account for other components or failure modes." U.S. Department of Energy, <u>LED Luminaire Reliability</u>. In the real world, it would take 4,167 days – or 11 1/2 years – to validate that Interlink's LED lights last 100,000 hours. Interlink's advertising claim that its LED lighting will last 100,000 hours is, therefore, unsubstantiated, and false.

45.    Moreover, consumers on Amazon and other e-commerce sites have posted comments showing that the lifetime of Interlink's LED lights was as short as two weeks.

46.    Interlink's advertising and promotion of its showerheads with LED lights lasting 100,000 hours is false and misleading.

47.    Interlink falsely represented the quality and lifetime of the LED showerheads in order to gain consumer's purchasing decisions.

48.    Interlink's misrepresentation of the life time of the LED lights are material to consumers, many of whom would not have purchased Interlink's products if they knew these statements were false, instead, they would have purchased other competitors' products, including Plaintiffs.

49.    Interlink has been unjustly enriched by the sales of its showerhead with advertising and marketing representations of LED lights with a lifetime of 100,000 hours.

**FIRST CLAIM FOR RELIEF**

**(False Advertising – 15 U.S.C. § 1125(a))**

50.    Plaintiffs hereby repeat, re-allege, and incorporate all of the allegations contained in the preceding paragraphs as though fully set forth herein.

51. Through the foregoing conduct, Interlink has made false and misleading statements of fact in commercial advertising or promotion in misrepresenting the nature, characteristics and/or qualities of its goods, services and/or commercial activities.

52. Interlink's actions constitute false advertising and a violation of 15 U.S.C. § 1125(a).

53. Interlink's false advertising has caused substantial and irreparable damage and injury to Plaintiffs for which Plaintiffs have no adequate remedy at law.

54. Accordingly, Plaintiffs are entitled to judgment awarding it preliminary and permanent injunctive relief, treble damages, disgorgement of profits, attorney fees, costs and any other relief the court deems just and equitable.

## SECOND CLAIM FOR RELIEF

### (Deceptive Trade Practices - Nev. Rev. Stat. Ann. § 598.0953)

55. Plaintiffs hereby repeat re-allege, and incorporate all of the allegations contained in the preceding paragraphs as though fully set forth herein.

56. Interlink has knowingly misrepresented or concealed material facts concerning the nature of its showerheads with the intent that potential purchasers rely upon such misrepresentations or concealment.

57. These acts and/or omissions are deceptive trade practices under Nevada law. The relevant statutes provide in such circumstances for a private right of action – and for standing for business competitors.

58. As a result of the foregoing conduct, Plaintiffs have suffered ascertainable loss including lost sales and lost market share.

59. Accordingly, Plaintiffs are entitled to judgment awarding them preliminary and permanent injunctive relief, damages, disgorgement of profits, attorney fees, costs, punitive damages and any other relief the Court deems just and equitable.

## THIRD CLAIM FOR RELIEF

### (Common Law Unfair Competition)

60. Plaintiffs hereby repeat, re-allege, and incorporate all of the allegations contained in the preceding paragraphs as though fully set forth herein.

61. Interlink is guilty of unfair competition in violation of Nevada's common law of unfair competition.

62. Interlink's unlawful conduct will continue to damage Plaintiffs unless enjoined by this court. Plaintiffs have no adequate remedy at law.

63. Through the acts described above, Interlink has willfully and knowingly engaged in unfair acts or practices and unfair methods of competition, has acted in such a manner in order to gain unfair advantage and has committed common law unfair competition.

64. Accordingly, Plaintiffs are entitled to judgment awarding them preliminary and permanent injunctive relief, damages, disgorgement of profits, attorney fees, costs, punitive damages and any other relief the court deems just and equitable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment in their favor and against Interlink as follows:

a) A declaration that Interlink has violated Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), the Nevada Deceptive Trade Practices Act Nev. Rev. Stat. Ann. § 598.0953, is liable for common law unfair competition, and has injured Plaintiffs in violation of Federal and State Law and has done so willfully all to the detriment of Plaintiffs.

b) An order that Interlink, its agents, servants, employees, successors and assigns and all persons in active concert, privity, or participation with Interlink be preliminarily and permanently enjoined from using any false description or representation and from engaging in any act or series of acts which either alone or in combination constitutes deceptive or unfair methods of competition by

HOLLAND & HART LLP
5441 Kietzke Lane, 2nd Floor
Reno, NV 89511
Phone: (775) 327-3000 ♦ Fax: (775) 786-6179

Interlink with Plaintiffs.

c) That the Court issue an order directing Interlink to provide an accounting of all revenues and profits gained by it while engaging in the acts complained of in this Complaint and that Interlink be required to account for and pay over to Plaintiffs Interlink's profit.

d) That the Court award Plaintiffs their actual damages, and awarding Plaintiffs any additional damages that the Court deems just and equitable under the circumstances of the case

e) Interlink be required to pay to Plaintiffs an amount three times the profits of Interlink or damages of Plaintiffs.

f) Interlink be required to pay to Plaintiffs punitive damages in a sum to be determined at trial.

g) Interlink be ordered to surrender for destruction all promotional materials, signs, labels, advertisements and other materials constituting false advertising and unfair competition and to issue corrective advertising to offset the impact and effect of the false, misleading and deceptive advertising claims previously disseminated.

h) That the Court declare this to be an exceptional case.

i) That the Court award Plaintiffs their allowable costs, investigate, and attorneys' fees.

j) That the Court award Plaintiffs prejudgment and post-judgment interest;

k) Plaintiffs be awarded such other and further relief, as this Court deems just and equitable.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury on all issues so triable.

DATED this 16th day of November, 2016.

**HOLLAND & HART LLP**

 /s/ Tamara Reid
Tamara Reid (SBN 9840)
5441 Kietzke Lane, Second Floor
Reno, Nevada  89511

Brent E. Johnson
(*Pro hac vice* to be filed)
Christopher B. Hadley
(*Pro hac vice* to be filed)
HOLLAND & HART LLP
222 South Main St., Suite 2200
Salt Lake City, Utah 84101

*Attorneys for Plaintiffs*

9166041_7