**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

|   |   |
|---|---|
| FAN FI INTERNATIONAL, INC. et al., ) <br> ) <br> Plaintiffs, ) <br> ) <br> vs. ) <br> ) <br> INTERLINK PRODUCTS ) <br> INTERNATIONAL, INC., ) <br> ) <br> Defendant. ) | 3:16-cv-00661-RCJ-VPC <br><br> **ORDER** |

This case arises out of alleged false advertising. Pending before the Court is a motion for judgment on the pleadings.

I.  **FACTS AND PROCEDURAL HISTORY**

   A.  **The New Jersey Actions**

On February 29, 2016, Interlink Products International, Inc. ("Interlink") sued Fan Fi International, Inc. ("Fan Fi") for patent infringement in the U.S. District Court for the District of New Jersey, alleging that Fan Fi's sale of certain dual showerhead products violated U.S. Patent No. 7,299,510. (*See* Compl., ECF No. 1 in D.N.J. Case No. 2:16-cv-1142). Interlink amended the complaint on June 23, 2016 to add ETL, LLC as a defendant. (*See* Am. Compl., ECF No. 14 in D.N.J. Case No. 2:16-cv-1142).

On March 4, 2016, Interlink again sued Fan Fi in the U.S. District Court for the District of New Jersey, this time for trademark infringement and unfair competition under both federal and state law, based on Fan Fi's use of the "POWER SPA" mark. (*See* Compl., ECF No. 1 in D.N.J. Case No. 2:16-cv-1244). Interlink amended the complaint on June 23, 2016 to add ETL, LLC as a defendant. (*See* Am. Compl., ECF No. 13 in D.N.J. Case No. 2:16-cv-1244). On July 29, 2016, Fan Fi and ETL counterclaimed for a declaration of non-infringement and cancellation of the mark. (*See* Answer & Countercl., ECF No. 23 in D.N.J. Case No. 2:16-cv-1244).

On August 2, 2016, Interlink sued Fan Fi and ETL for a third time in the U.S. District Court for the District of New Jersey for false advertising under the Lanham Act and several related state law causes of action based on advertising claims Fan Fi and ETL made in relation to their showerhead products. (*See* Compl., ECF No. 1 in D.N.J. Case No. 2:16-cv-4663).

On September 28, 2016, the three New Jersey actions were consolidated in that district, with the '1142 Case as the lead case. That court denied a motion by Fan Fi and ETL to transfer the cases to this District under 28 U.S.C. § 1404(a).

**B.     The Present Action**

On November 16, 2016, Fan Fi and ETL sued Interlink in this Court for false advertising under the Lanham Act and deceptive trade practices and unfair competition under Nevada law. Plaintiffs allege that certain of Defendant's showerheads violate federal regulations because they permit a flow of greater than 2.5 gallons per minute at 80 pounds per square inch when the flow restrictor is removed and that the flow restrictors can be removed with less than eight pounds of force. Plaintiffs allege that Defendant's advertising claims that its showerheads comply with federal law are therefore false.

Defendant moved to dismiss for failure to state a claim. The Court granted the motion in part. Plaintiffs had only alleged that Defendant's showerheads violated flow rate limitations if modified by consumers, not as sold by Defendant. The Court gave Plaintiffs leave to amend in that regard. The Court did not dismiss as to the allegation that Defendant's showerheads' flow restrictors could be removed with less than eight pounds of force ("the force test"), but the Court ordered Plaintiffs to make a more definite statement as to that allegation, i.e., to specify which of Defendant's products violated the force test.

Plaintiffs filed the First Amended Complaint ("FAC"). Defendant moved to dismiss the FAC for failure to state a claim and also moved for summary judgment. The Court dismissed the claims based on violations of flow rates and false claims of LED lifespan, with leave to amend as to the LED lifespan issue. The Court refused to dismiss based on violations of the force test. The Court struck the allegations concerning federal labeling and marking requirements because there was no leave to add those claims. As to any claims surviving dismissal, the Court denied summary judgment without prejudice, as discovery was ongoing.

Plaintiffs filed the Second Amended Complaint ("SAC"). Defendant has answered and has moved for judgment on the pleadings.

## II. LEGAL STANDARDS

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). The standards governing a Rule 12(c) motion are the same as those governing a Rule 12(b)(6) motion. *See Dworkin v. Hustler Magazine, Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989).

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of

what the . . . claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). Federal Rule of Civil Procedure 12(b)(6) mandates that a court dismiss a cause of action that fails to state a claim upon which relief can be granted. A motion to dismiss under Rule 12(b)(6) tests the complaint's sufficiency. *See N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). When considering a motion to dismiss under Rule 12(b)(6) for failure to state a claim, dismissal is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In considering whether the complaint is sufficient to state a claim, the court will take all material allegations as true and construe them in the light most favorable to the plaintiff. *See NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986). The court, however, is not required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

A formulaic recitation of a cause of action with conclusory allegations is not sufficient; a plaintiff must plead facts pertaining to his own case making a violation "plausible," not just "possible." *Ashcroft v. Iqbal*, 556 U.S. 662, 677–79 (2009) (citing *Twombly*, 550 U.S. at 556) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). That is, under the modern interpretation of Rule 8(a), a plaintiff must not only specify or imply a cognizable legal theory (*Conley* review), he must also allege the facts of his case so that the court can determine whether he has any basis for relief under the legal theory he has specified or implied, assuming the facts are as he alleges (*Twombly-Iqbal* review). Put differently, *Conley* only required a plaintiff to identify a major premise (a legal theory) and conclude liability

therefrom, but *Twombly-Iqbal* requires a plaintiff additionally to allege minor premises (facts of the plaintiff's case) such that the syllogism showing liability is complete and that liability necessarily, not only possibly, follows (assuming the allegations of fact are true).

"Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion. However, material which is properly submitted as part of the complaint may be considered on a motion to dismiss." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990) (citation omitted). Similarly, "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss" without converting the motion to dismiss into a motion for summary judgment. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994). Moreover, under Federal Rule of Evidence 201, a court may take judicial notice of "matters of public record." *Mack v. S. Bay Beer Distribs., Inc.*, 798 F.2d 1279, 1282 (9th Cir. 1986). Otherwise, if the district court considers materials outside of the pleadings, the motion to dismiss is converted into a motion for summary judgment. *See Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir. 2001).

### III.  ANALYSIS

Defendant first argues that false advertising claims cannot be based on unsettled regulatory provisions. In *PhotoMedex, Inc. v. Irwin*, the Court of Appeals held that because the Food, Drug, and Cosmetic Act permitted no private action, one could not invoke the Lanham Act based on an alleged misrepresentation where the Food and Drug Administration had neither made a contrary finding nor brought an enforcement action itself. 601 F.3d 919, 922 (9th Cir. 2010). The question is whether a determination of the falsity of a representation would require a

court to perform an original interpretation of the governing agency's own regulations. *Id.* at 928. Unless the relevant regulation leaves no room for ambiguity, the relevant agency must have itself made an unambiguous statement concerning the issue that the alleged misrepresentation contradicts. *Id.* at 929. Otherwise, the appropriate forum is the regulatory agency itself, not a Lanham Act claim in the district court. *Id.*

Defendant argues that the force test regulation, 10 C.F.R. § 430.32(p), is ambiguous, noting that the Department of Energy ("DOE") itself—the agency that promulgated the regulation containing the test—has expressly stated in the Federal Register that the meaning is so unclear that it has yet to establish a test method to determine whether a shower head satisfies the test. *See* 78 FR 62970, 62974. Plaintiffs argue that 8.0 pounds of force is not ambiguous. But the DOE itself has refused to adopt a test procedure because of concerns articulated by commenters as to the testing procedure. *See id.* The Court agrees that a false advertising claim is not appropriate as to this issue while the DOE remains in the notice-and-comment phase of administrative rulemaking as to the meaning of the force test. Plaintiffs focus on the clarity of "8.0 pounds," but just as a remedy can be as important as the underlying right, the testing procedure used can be as important as the objective force threshold.[1]

---

[1] Must the force be applied perpendicularly to the plane of the flow restrictor, or may it be applied at an angle? If at an angle, must the force be a straight pull in a constant direction, or may the flow restrictor be pried out via a lever? Must the force be measured at the extreme tip of the lever, or only at the point where the lever's force is actually applied to the flow restrictor? What if the lever touches the flow restrictor over a span where the force required is both greater than and less than eight pounds? What if the flow restrictor is shaped so as not to be susceptible to a conventional pull or pry? What if less than eight pounds is required to saw the flow restrictor into pieces so that it can be pulled out, but more than 8 pounds would be required to pull it out intact? What if eight pounds of force causes a flow restrictor to become dislodged from its initial position but does not result in a flow rate above 2.5 gallons per minute? What if eight pounds of force can result in a flow rate of over 2.5 gallons per minute, but the flow restrictor remains generally in place?

Second, Defendant argues that the relevant regulations only apply to showerheads sold by manufacturers and private labelers, not those in the possession of consumers or retailers. The Court rejects this argument, although the issue is moot given the result under *PhotoMedex*. The Court has already ruled that because there was no allegation that the showerheads violated flow rates when sold, but only if freely modified by consumers, there was no claim of falsity as to the flow rate. But the Court found that Plaintiffs had sufficiently alleged that Defendant's showerheads failed the force test as sold.

Third, Defendant argues that the SAC has not cured the defects in the FAC as to the claims of LED lifespan. Plaintiffs previously alleged that Defendant advertises a 100,000-hour lifespan, which exceeds typical industry claims of 25,000-to-50,000 hours and argued that the advertising claim was false because it would take 11 ½ years to substantiate and unidentified consumers had complained that the LEDs failed in as little as two weeks. The Court dismissed, with leave to amend, reasoning that a manufacturer needn't demonstrate an advertising claim is true but that a claim of product life could be based on a reasonable estimate, and that isolated instances of product failure did not show falsity. Plaintiffs would have to base their claim of falsehood on something objective, e.g., a mechanical comparison of Defendant's LED system with an LED system of known lifespan, or some other objective examination that would give plausibility to the allegation that a 100,000-hour lifespan is false.

Plaintiffs have now incorporated allegations made against Defendant in another case and alleged that the relevant party has tested one of the showerheads, finding a lifetime of 199 hours. (*See* Second Am. Compl. ¶¶ 34–35, ECF No. 45). The Court finds that the allegations in another party's answer in a fourth New Jersey action, as incorporated into the SAC, is sufficient to make out a plausible claim of falsity as to LED lifespan:

> Cathy Trading has purchased and tested Interlink product number 1487. Cathy Trading conducted testing by running water between 23-27 Celsius degree from 10:00AM, May 26, 2016, continuously non-stop, the LED lights installed in Product 1487 stopped functioning at 4:43PM on June 3, 2016. The total lifetime of the workable LED light system installed in this showerhead was 198 hours and 43 minutes. Cathy Trading further consulted with experts in the LED light industry, and identified Interlink distributes numerous showerhead products embedded with the similar type of LED lights in them. These LED lights comprise an LED light system that includes a motor that generates power to the LED light from the movement of water through the showerhead. This motor lasts for several hundred or several thousand hours. Hence, the LED light systems installed in Interlink's showerhead products never have the ability of reaching 100,000 hours as the life is limited by the motor or the actual LED light bulbs themselves which rarely experience a 100,000 life span.

(*See* Answer ¶ 24, ECF No. 55 in D.N.J. Case No. 2:16-cv-2153). These allegations are based not on pure disbelief or anonymous claims of isolated failure but on a claim of an actual test and a mechanical explanation by experts of why the claims are almost certainly false. Defendant notes that there is no indication of expert testing or testing of more than one unit. But at the pleading stage, Plaintiffs need only make plausible allegations. The allegations of testing and the likely impossibility of the advertising claims being true based on the mechanical characteristics of the product is enough to cross the line from possible to plausible. This is more than a simple statement of disbelief or anonymous claims of isolated failure. Although only one unit failed, that was the only unit tested. That makes it plausible that the claim of a 100,000 hour LED lifespan is generally false, whereas a single report of failure out of thousands of products sold could just as easily indicate an isolated manufacturing defect. Plaintiffs will have to do more to survive summary judgment, of course, but they have plausibly alleged falsity at the pleading stage based on their incorporation of the allegations made in the answer in the '2153 Case from the District of New Jersey.

///

///

**CONCLUSION**

IT IS HEREBY ORDERED that the Motion for Judgment on the Pleadings (ECF No. 48) is GRANTED IN PART and DENIED IN PART. The claims are dismissed insofar as they are based on violations of 10 C.F.R. § 430.32(p).

IT IS SO ORDERED.

Dated: This 27th day of September, 2017.

_____
ROBERT C. JONES
United States District Judge